# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ACME PRODUCTS INC.     :
             :
   Plaintiff,     :
             :
   v.      :  No.:_____
             :
JLM DISTRO LLC,     :
COG Logistics LLC,     :
JOSHUA SILVERMAN, and  :
BRIAN HERBSTMAN,    :
             :
   Defendants.    :

## COMPLAINT

ACME Products Inc., a New Jersey corporation, by way of Complaint against JLM Distro LLC, COG Logistics LLC, Joshua Silverman, and Brian Herbstman, on knowledge as to ACME Products Inc., and otherwise on information and belief, alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for false designation of origin and false advertising under the trademark laws of the United States including 15 U.S.C. sections 1116, 1117, 1125(a); common law trademark and trade dress infringement and unfair competition; trademark infringement under New Jersey statute; and unjust enrichment.

## THE PARTIES

2. Plaintiff, ACME Products Inc. ("ACME Products"), is a New Jersey corporation having a place of business at 725 Lehigh Avenue, Union, New Jersey 07083.

3.    On information and belief, defendant JLM Distro LLC ("JLM Distro") is a Florida limited liability company having a place of business at 2201 Marina Bay Drive West, Fort Lauderdale, Florida 33312.

4.    On information and belief, JLM Distro's registered agent for service of process is Joshua Silverman, 2201 Marina Bay Drive West, Fort Lauderdale, Florida 33312.

5.    On information and belief, Joshua Silverman is an officer of JLM Distro.

6.    On information and belief, Joshua Silverman is an owner of JLM Distro.

7.    On information and belief, defendant COG Logistics LLC ("COG Logistics") is a New Jersey limited liability company having a place of business at 469 West Country Club Drive, Westampton Township, New Jersey 08060.

8.    On information and belief, COG Logistics' registered agent for service of process is Jereme Cohen, 469 West Country Club Drive, Westampton Township, New Jersey 08060.

9.    On information and belief, Jereme Cohen is a member/manager of COG Logistics.

10.    On information and belief, Brian Herbstman is an individual having a residence at 14 Lakeside Drive, Jackson, New Jersey 08527.

## VENUE

11.    Venue is proper in this District under 28 U.S.C. § 139l(b) and (c) and because defendants conduct substantial business and are subject to personal jurisdiction in this District.

## JURISDICTION

12.    These claims arise under the Federal Trademark Act of 1946 as amended, 15 U.S.C. § 1051, *et seq.* (1994) (the Lanham Act).

2

13.     Subject matter jurisdiction over this action is proper in this court under 15 U.S.C. section 1121 and 28 U.S.C. sections 1331, 1338 and 1367(a), and over the related state claims under the doctrine of supplemental jurisdiction.

14.     This Court has personal jurisdiction over all defendants because they have offered for sale and/or sold infringing goods within this District and the State of New Jersey.

15.     This Court has personal jurisdiction over Defendant COG Logistics and Herbstman because they reside in this District.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

16.     Since around October 1995, AFAB Industrial Services Inc. ("AFAB Industrial") has engaged in the development, manufacture, distribution, marketing, and sale of a variety of consumer products throughout the United States and the world.

17.     From at least as early as October 1995 to around December 2020, AFAB Industrial manufactured and sold a cleaning solvent product using the trademark MAXIMUM IMPACT.

18.     From at least as early as October 1995 to around December 2020, AFAB Industrial also manufactured and sold a cleaning solvent product using the trademark

M<sub>IMPACT</sub><sup>AXIMU</sup>M (the "MAXIMUM IMPACT Logo")

19.     From at least as early as October 1995 to around December 2020, AFAB Industrial also manufactured and sold a cleaning solvent product using a distinctive trade dress (the "Original MAXIMUM IMPACT Trade Dress") comprising: a silver, cylindrical canister approximately 1.5 inches in diameter and approximately 5.5 inches in height; a black, knurled cap approximately 1.4 inches in diameter at the base, approximately 1.3 inches at the top, and approximately 1 inch in height; the MAXIMUM IMPACT Logo embossed on the top of the cap;

labelling copy imprinted in black typeface ranging in font size from about 6 to 14 including: a consumer safety warning and contents description imprinted on the bottom of the canister; the mark MAXIMUM IMPACT logo above the consumer safety warning and contents description; and the word PREMIUM imprinted on an angle above the MAXIMUM IMPACT Logo; and, a product description and additional consumer safety warnings imprinted on the back face of the canister.

20.    An image of the Original MAXIMUM IMPACT Trade Dress is shown in Exhibit 1.

21.    The Original MAXIMUM IMPACT Trade Dress is non-functional.

22.    The Original MAXIMUM IMPACT Trade Dress is distinctive.

23.    The mark MAXIMUM IMPACT and the MAXIMUM IMPACT Logo are collectively hereinafter referred to as the MAXIMUM IMPACT Marks.

24.    From at least as early as October 1995 to around December 2020, AFAB Industrial used the MAXIMUM IMPACT Marks and the Original MAXIMUM IMPACT Trade Dress in commerce to advertise, promote and sell a cleaning solvent product, in addition to several other products, and to identify and distinguish its goods from the goods of other companies.

25.    From at least as early as October 1995 to around December 2020, AFAB Industrial continuously used and heavily promoted and advertised the MAXIMUM IMPACT Marks and the Original MAXIMUM IMPACT Trade Dress in connection with a cleaning solvent product and other products.

26.    Through AFAB Industrial's substantial marketing and advertising efforts, the MAXIMUM IMPACT Marks and the Original MAXIMUM IMPACT Trade Dress became

famous in the cleaning solvent industry and other industries, and recognized throughout the United States as trademarks and trade dress of AFAB Industrial.

27.     On March 26, 2013, the mark MAXIMUM IMPACT was registered to AFAB Industrial as U.S. Reg. No. 4,309,475 ("the '475 Registration") on the Principal Register of the U.S. Trademark Office for use in connection with cleaning preparations for audio, video and data recorders in international class 003, in addition to several other goods in international classes 003, 005 and 032.

28.     Since around January 2015, plaintiff ACME Products has engaged in the marketing and distribution of a variety of consumer products throughout the United States and the world, including cleaning products.

29.     In or around July 2019, AFAB Industries agreed to partially assign to ACME Products the right, title and interest to the MAXIMUM IMPACT Marks and the Original MAXIMUM IMPACT Trade Dress, and the goodwill associated with the MAXIMUM IMPACT Marks and the Original MAXIMUM IMPACT Trade Dress.  The partial assignment was limited to use of the MAXIMUM IMPACT Marks and the Original MAXIMUM IMPACT Trade Dress in connection with cleaning solvent.  The partial assignment became effective on January 1, 2020.

30.     Since January 2020 and continuing to present, ACME Products has marketed and distributed a cleaning solvent product using the MAXIMUM IMPACT Marks.

31.     Since January 2020 and continuing to present, ACME Products has marketed and distributed a cleaning solvent product using a distinctive variation of the Original MAXIMUM IMPACT Trade Dress, comprising: a silver (color code 10077C), cylindrical canister approximately 1.5 inches in diameter and approximately 6 inches in height; a black (color code

6C), knurled cap approximately 1.4 inches in diameter at the base, approximately 1.3 inches at the top, and approximately 1 inch in height; the MAXIMUM IMPACT Logo embossed on the top of the cap; labelling copy imprinted in black (color code 6C) Cooper Black and Arial typeface ranging in font size from about 6 to 14 including: a first consumer safety warning surrounded by a black square imprinted on the front face of the canister; a contents description imprinted above the first consumer safety warning; a second consumer safety warning imprinted above the contents description; the MAXIMUM IMPACT Logo above the second consumer safety warning; and a third consumer safety warning surrounded by a black square imprinted above the MAXIMUM IMPACT Logo; and, a product description and additional consumer safety warnings imprinted on the back face of the canister. (the "MAXIMUM IMPACT Trade Dress").

32.    Images of the current MAXIMUM IMPACT Trade Dress are shown in Exhibit 2.

33.    The MAXIMUM IMPACT Trade Dress is non-functional.

34.    The MAXIMUM IMPACT Trade Dress is distinctive.

35.    Since January 2020 and continuing to present, ACME Products has continuously used the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress in commerce to advertise, promote and sell a cleaning solvent product, and to identify and distinguish its cleaning solvent product from the goods of other companies.

36.    Through ACME Products' substantial marketing and advertising efforts, the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress continue to be famous in the cleaning solvent industry and recognized throughout the United States as trademarks of ACME Products.

6

37.    ACME Products is the current owner by way of assignment, and exclusive and continuous use throughout the United States, of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress, for use in connection with cleaning solvent.

38.    On March 27, 2023, AFAB Industries filed a renewal application for the '475 Registration.  Since AFAB had assigned the rights to the MAXIMUM IMPACT Marks in connection with cleaning solvent to ACME Products, the goods "cleaning preparations for audio, video and data recorders" were omitted from the renewal application and excluded from AFAB Industries' exclusive rights under the '475 Registration.

39.    On September 29, 2023, the renewal application for the '475 Registration was approved and the '475 Registration was renewed.

40.    On June 9, 2026, ACME Products filed U.S. trademark application no. 99/874,233 for the mark MAXIMUM IMPACT for use in connection with cleaning preparations. The '233 Application is pending.

41.    On June 9, 2026, ACME Products filed U.S. trademark application no. 99/874,259 for the MAXIMUM IMPACT Logo for use in connection with cleaning preparations. The '259 Application is pending.

42.    Since January 2020, ACME Products has sold its cleaning solvent using the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress in substantial quantities in this district and throughout the United States.

43.    ACME Products owns valuable goodwill associated with its cleaning solvent product, which is symbolized by the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

7

## DEFENDANTS' UNLAWFUL ACTIVITIES

44. Recently, ACME Products discovered that Defendants are unlawfully using the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress in connection with the sale of a competing cleaning solvent product.

45. Recently, ACME Products discovered that Defendants are unlawfully selling a cleaning solvent product bearing marks and a trade dress that are identical to or substantially indistinguishable from the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

46. Defendants are unlawfully and falsely labelling its cleaning solvent product using the registered trademark symbol ® in association with the MAXIMUM IMPACT Logo.

47. Defendants are unlawfully and falsely labelling its cleaning solvent product in violation of the Federal Hazardous Substances Act, 15 U.S.C. § 1261 et seq.

48. On information and belief, Defendants are unlawfully and falsely labelling its cleaning solvent product by mis-identifying the manufacturer, packer, distributor and/or seller of the product.

49. On information and belief, Defendants are unlawfully and falsely labelling its cleaning solvent product by mis-identifying the manufacturer, packer, distributor and/or seller of the product using a fictitious company, namely, Great Cleaners of Empire State.

50. On information and belief, Defendants' competing cleaning solvent product is being manufactured and packaged by defendant JLM Distro.

51. On information and belief, JLM Distro is wholly owned and/or controlled by defendant Joshua Silverman.

8

52. On information and belief, Silverman is personally and actively directing JLM Distro's manufacturing, packaging and sale of a competing cleaning solvent product bearing the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress with full knowledge of ACME Products' exclusive rights in the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

53. On information and belief, Defendants' competing cleaning solvent product is being distributed by COG Logistics.

54. On information and belief, COG Logistics is wholly owned and/or controlled by Jereme Cohen.

55. On information and belief, Brian Herbstman is personally and actively directing COG Logistics distribution of a competing cleaning solvent product bearing the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress with full knowledge of ACME Products' exclusive rights in the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

56. On information and belief, Defendants are aware of ACME Products' exclusive rights in the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress for use in connection with cleaning solvent.

57. Defendants are not affiliated in any way with, are not a licensee of, and are not an authorized distributor of ACME Products. Defendants are not a reseller of genuine ACME Products' products. Defendants have been given no authorization, express or implied, to use the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

58. Defendants' commercial use of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress in connection with their cleaning solvent product infringes

9

upon ACME Products' exclusive rights in the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

59. Defendants' commercial use of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress in connection with their cleaning solvent product is likely to cause marketplace confusion with ACME Products' cleaning solvent product sold under the same MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

60. Defendants' commercial use of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress in connection with their cleaning solvent product falsely suggests that Defendants' cleaning solvent product has the same properties, quality and performance characteristics as ACME Product's cleaning solvent.

61. On information and belief, Defendants are using the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress on inferior products.

62. On information and belief, Defendants' manufacturing facilities do not have the same industry certifications as ACME Products' manufacturing facilities.

63. On information and belief, Defendants' manufacturing process lacks the same quality-control procedures that are implemented by ACME Products.

64. Defendants are tarnishing ACME Products' famous MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

65. ACME Products and Defendants are direct competitors in the cleaning solvent industry.

66. As a result of Defendants' acts, ACME Products has been injured by, *inter alia*, diversion of sales from itself to Defendants, by lessening of the goodwill of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress, and/or by lessening of the goodwill

10

associated with its products by the consuming public.

67.     Defendants are intentionally using marks and a trade dress that are identical to the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress with the intent of misleading the public into believing that some form of connection or association exists between the parties, and/or that Defendants are authorized to use the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

68.     Defendants' infringement of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress and unfair competition entitles ACME Products to damages and an injunction against continued infringement.

## COUNT I - MAXIMUM IMPACT
## FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

69.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

70.     Defendants' acts, including its use of the mark MAXIMUM IMPACT and misidentification of the manufacturer, packer, distributor and/or seller of the product, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

71.     Defendants have used and are using a copy, variation, simulation or colorable imitation of the mark MAXIMUM IMPACT in connection with Defendants' offering and sale of cleaning solvent with full knowledge of the long and extensive prior use of the mark MAXIMUM IMPACT by ACME Products.

72.     Defendants' unauthorized use of the mark MAXIMUM IMPACT in connection with selling, offering for sale, distributing and advertising its competing cleaning solvent is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

11

association of Defendants with ACME Products, or as to the origin, sponsorship, or approval of Defendants' goods by ACME Products.

73.    Defendants' actions constitute a false designation of origin, a false description of goods, and a false representation that Defendants' goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with ACME Products.

74.    Defendants' actions were and are being done willfully with full knowledge of the falsity of such designations of origin and false description or representations, and with the express intent to cause confusion, mislead and deceive the purchasing/consuming public, to trade upon the high-quality reputation of ACME Products' mark MAXIMUM IMPACT, and to improperly appropriate the valuable goodwill associated with the mark MAXIMUM IMPACT, all to the detriment of ACME Products.

### COUNT II - MAXIMUM IMPACT LOGO
### FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

75.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

76.    Defendants' acts, including its use of the MAXIMUM IMPACT Logo, use of the registered trademark symbol ® in connection with the MAXIMUM IMPACT Logo, and misidentification of the manufacturer, packer, distributor and/or seller of the product, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

77.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the MAXIMUM IMPACT Logo in connection with Defendants' offering and sale of cleaning solvent with full knowledge of the long and extensive prior use of the MAXIMUM IMPACT Logo by ACME Products.

78.    Defendants' unauthorized use of the MAXIMUM IMPACT Logo in connection with selling, offering for sale, distributing and advertising its competing cleaning solvent is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with ACME Products, or as to the origin, sponsorship, or approval of Defendants' goods by ACME Products.

79.    Defendants' actions constitute a false designation of origin, a false description of goods, and a false representation that Defendants' goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with ACME Products.

80.    Defendants' actions were and are being done willfully with full knowledge of the falsity of such designations of origin and false description or representations, and with the express intent to cause confusion, mislead and deceive the purchasing/consuming public, to trade upon the high-quality reputation of ACME Products' MAXIMUM IMPACT Logo, and to improperly appropriate the valuable goodwill associated with the MAXIMUM IMPACT Logo, all to the detriment of ACME Products.

**COUNT III – MAXIMUM IMPACT TRADE DRESS
FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT**

81.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

82.    Defendants' acts, including its use of the MAXIMUM IMPACT Trade Dress and misidentification of the manufacturer, packer, distributor and/or seller of the product, violate Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

83.    Defendants have used and are using a copy, variation, simulation or colorable imitation of the MAXIMUM IMPACT Trade Dress in connection with Defendants' offering and

13

sale of cleaning solvent with full knowledge of the long and extensive prior use of the MAXIMUM IMPACT Trade Dress by ACME Products.

84.    Defendants' unauthorized use of the MAXIMUM IMPACT Trade Dress in connection with selling, offering for sale, distributing and advertising its competing cleaning solvent is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with ACME Products, or as to the origin, sponsorship, or approval of Defendants' goods by ACME Products.

85.    Defendants' actions constitute a false designation of origin, a false description of goods, and a false representation that Defendants' goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with ACME Products.

86.    Defendants' actions were and are being done willfully with full knowledge of the falsity of such designations of origin and false description or representations, and with the express intent to cause confusion, mislead and deceive the purchasing/consuming public, to trade upon the high-quality reputation of ACME Products' MAXIMUM IMPACT Trade Dress, and to improperly appropriate the valuable goodwill associated with the MAXIMUM IMPACT Trade Dress, all to the detriment of ACME Products.

**COUNT IV - MAXIMUM IMPACT**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

87.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

88.    Defendants' acts, including its use of the mark MAXIMUM IMPACT in connection with its competing cleaning solvent product, constitute common law trademark

14

infringement of ACME Products' mark MAXIMUM IMPACT and common law unfair competition.

89.    Defendants' use of the mark MAXIMUM IMPACT in connection with its competing cleaning solvent product is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

90.    Defendants' use of the mark MAXIMUM IMPACT is being done with the intent, purpose and effect of procuring an unfair competitive advantage over ACME Products by misappropriating the valuable goodwill developed by ACME Products in its mark MAXIMUM IMPACT.

## COUNT V - MAXIMUM IMPACT LOGO
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

91.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

92.    Defendants' acts, including its use of the mark MAXIMUM IMPACT Logo in connection with its competing cleaning solvent product, constitute common law trademark infringement of ACME Products' mark MAXIMUM IMPACT Logo and common law unfair competition.

93.    Defendants' use of the mark MAXIMUM IMPACT Logo in connection with its competing cleaning solvent product is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

94.    Defendants' use of the mark MAXIMUM IMPACT Logo is being done with the intent, purpose and effect of procuring an unfair competitive advantage over ACME Products by misappropriating the valuable goodwill developed by ACME Products in its mark MAXIMUM IMPACT Logo.

15

## COUNT VI – MAXIMUM IMPACT TRADE DRESS
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

95.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

96.     Defendants' acts, including its use of the MAXIMUM IMPACT Trade Dress in connection with its competing cleaning solvent product, constitute common law trademark infringement of ACME Products' MAXIMUM IMPACT Trade Dress and common law unfair competition.

97.     Defendants' use of the MAXIMUM IMPACT Trade Dress in connection with its competing cleaning solvent product is likely to cause confusion among consumers as to source, sponsorship or affiliation of Defendants' goods.

98.     Defendants' use of the MAXIMUM IMPACT Trade Dress is being done with the intent, purpose and effect of procuring an unfair competitive advantage over ACME Products by misappropriating the valuable goodwill developed by ACME Products in its MAXIMUM IMPACT Trade Dress.

## COUNT VII - MAXIMUM IMPACT
## TRADEMARK INFRINGEMENT UNDER NJ REV. STAT § 56:3-13.16

99.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

100.    Defendants' acts, including its use of the mark MAXIMUM IMPACT in connection with its competing cleaning solvent product, constitute trademark infringement under NJ Rev. Stat § 56:3-13.16 of ACME Products' mark MAXIMUM IMPACT.

101.    Defendants' use of the mark MAXIMUM IMPACT in connection with its competing cleaning solvent product is likely to cause confusion or mistake or to deceive consumers as to the source of origin of Defendants' goods.

102.    Defendants' use of the mark MAXIMUM IMPACT is being done with the intent, purpose and effect of causing confusion or mistake or to deceive consumers as to the source of origin of Defendants' goods.

103.    Defendants use of the mark MAXIMUM IMPACT is being done with the intent of procuring an unfair competitive advantage over ACME Products by misappropriating the valuable goodwill developed by ACME Products in its mark MAXIMUM IMPACT.

## COUNT VIII - MAXIMUM IMPACT LOGO
## TRADEMARK INFRINGEMENT UNDER NJ REV. STAT § 56:3-13.16

104.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

105.    Defendants' acts, including its use of the MAXIMUM IMPACT Logo in connection with its competing cleaning solvent product, constitute trademark infringement under NJ Rev. Stat § 56:3-13.16 of ACME Products' MAXIMUM IMPACT Logo.

106.    Defendants' use of the MAXIMUM IMPACT Logo in connection with its competing cleaning solvent product is likely to cause confusion or mistake or to deceive consumers as to the source of origin of Defendants' goods.

107.    Defendants' use of the MAXIMUM IMPACT Logo is being done with the intent, purpose and effect of causing confusion or mistake or to deceive consumers as to the source of origin of Defendants' goods.

108.    Defendants use of the MAXIMUM IMPACT Logo is being done with the intent of procuring an unfair competitive advantage over ACME Products by misappropriating the valuable goodwill developed by ACME Products in its MAXIMUM IMPACT Logo.

### COUNT IX - MAXIMUM IMPACT TRADE DRESS
### TRADEMARK INFRINGEMENT UNDER NJ REV. STAT § 56:3-13.16

109.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

110.    Defendants' acts, including its use of the MAXIMUM IMPACT Trade Dress in connection with its competing cleaning solvent product, constitute trademark infringement under NJ Rev. Stat § 56:3-13.16 of ACME Products' MAXIMUM IMPACT Trade Dress.

111.    Defendants' use of the MAXIMUM IMPACT Trade Dress in connection with its competing cleaning solvent product is likely to cause confusion or mistake or to deceive consumers as to the source of origin of Defendants' goods.

112.    Defendants' use of the MAXIMUM IMPACT Trade Dress is being done with the intent, purpose and effect of causing confusion or mistake or to deceive consumers as to the source of origin of Defendants' goods.

113.    Defendants use of the MAXIMUM IMPACT Trade Dress is being done with the intent of procuring an unfair competitive advantage over ACME Products by misappropriating the valuable goodwill developed by ACME Products in its MAXIMUM IMPACT Trade Dress.

### COUNT X – FALSE ADVERTISING UNDER THE LANHAM ACT

114.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

115.    Defendants' acts, including use of the MAXIMUM IMPACT Marks and MAXIMUM IMPACT Trade Dress misidentification of the manufacturer, packer, distributor

18

and/or seller of the product, constitute false advertising under Section 43(a)(1)(B) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(B).

116.    Defendants, in commercial advertising or promotion, have misrepresented the nature, characteristics, qualities, or geographic origin of Defendants' goods or ACME Products' goods.

117.    Defendants' use of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress falsely suggests that Defendants' products have the same properties, quality and/or performance characteristics as ACME Products' products sold using the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress.

118.    The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' cleaning solvent product is chemically and functionally equivalent to ACME Products' cleaning solvent product.

119.    The foregoing acts of Defendants are likely to influence the purchasing decision of consumers for ACME Products' and Defendants' competing cleaning solvent product.

120.    On information and belief, Defendant has made the aforementioned misrepresentations without a basis in fact.

121.    Defendants' acts are being done with the intent, purpose and effect of procuring an unfair competitive advantage over ACME Products by misrepresenting the quality, properties, and/or performance characteristics of Defendants' cleaning solvent product.

**COUNT XI – UNJUST ENRICHMENT**

122.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

19

123.    Defendants' acts, including use of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress, constitute unjust enrichment.

124.    Defendants and ACME Products are direct competitors.

125.    Defendants have profited by unlawfully using the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress, trading off the goodwill and reputation of ACME Products, and diverting customers from ACME Products to the Defendants.

126.    Defendants' profits have been derived at the expense of ACME Products.

127.    Defendants were aware that they were profiting from their unlawful use of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress, and actively accepted and enjoyed those profits.  The retention of those profits by Defendants would be unjust.

## PRAYER FOR RELIEF

**WHEREFORE**, ACME Products prays for:

a)    an injunction permanently enjoining Defendants from:

1)    using any one of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress in any manner in conjunction with any cleaning solvent product;

2)    using any one of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress and any other reproduction or imitation thereof in connection with offering or providing of any goods or services in any manner likely to cause confusion, to cause a mistake or to deceive the relevant trade and/or public, or cause the public to believe that Defendant's products are ACME Product's products or are sponsored or authorized by ACME Products;

3)      using any one of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress and any other reproduction or imitation thereof in connection with offering or providing of any goods or services, including, but not limited to in any manner so as to dilute the distinctive quality of such marks;

4)      committing any acts calculated to cause purchasers, potential purchasers, and/or the public to believe that Defendants are in any way related with/to ACME Products;

5)      otherwise competing unfairly with ACME Products in any manner;

6)      using or registering any domain name or trademark, trade name or trade dress which is the same or substantially similar to any one of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress;

7)      destroying or altering any documents, electronic files, or business records that relate to the copying, reproduction, manufacture, duplication, dissemination, purchase, distribution, marketing, or sale of any products bearing the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress; and

8)      assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities prohibited by sub-paragraphs (1) through (8) herein above.

b)      an Order requiring Defendants to provide a full accounting of any and all monies received by Defendants from any source relating to the sale of such infringing goods;

c)      an Order permitting ACME Products to take expedited discovery to determine the location of and particulars of the following things and turn over same to ACME Products' counsel:

1)      all information; documents, and things that relate, in whole or in part, to Defendants making, distributing, marketing, offering for sale, selling or otherwise dealing in the

21

products bearing/using the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress, or any marks similar thereto including, without limitation, all e-mails, faxes, notices, correspondence, memoranda, financial records, financial statements, banking records, sales records, computer records, receipts, and invoices, that are or have been in the possession, custody, power, or control of Defendants, whether on Defendants' premises or elsewhere or have been held on Defendants' behalf by any other person, and that relate in whole or in part to such uses by Defendants;

2) all computer-information storage systems, including all computers, computer discs, computer tapes, and backups thereof that contain information, relating to the making, distributing, marketing, offering for sale and sale of products bearing/using the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress;

3) particulars of all cataloging systems, storage systems, access procedures, identification codes, passkey numbers, and any other or similar information necessary to determine the location of or to gain access, including computer access, to all such records;

4) all business records, inclusive of all financial documents and correspondence relating to Defendants' making, distributing, marketing, offering for sale and selling of all such infringing products;

5) any and all products bearing the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress; and

6) any and all documents, receipts, records, inventory of the products bearing the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress;

d) an order awarding ACME Products monetary damages pursuant to 15 U.S.C. § 1117(a) for Defendants' trademark infringement, false designation of origin, and false

22

advertising, and unjust enrichment determined as: (1) Defendants' profits, (2) any damages sustained by ACME Products, (3) the costs of the action, together with prejudgment and post-judgment interest, and (4) enhanced damages;

e)      an order requiring Defendants to prepare and send a notice to each of its active customers/patrons/supporters and each past customers/patrons/supporters to whom they may have sold/advertised goods bearing the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress notifying them that Defendants are not affiliated with or sponsored by ACME Products, and ACME Products has the exclusive rights to the use of the MAXIMUM IMPACT Marks and the MAXIMUM IMPACT Trade Dress;

f)      an Order requiring Defendant to indemnify ACME Products for all fees and costs and damages incurred in the future due to any and all claims made against ACME Products as a result of Defendants' infringing products; and

g)      all other and further relief as the Court may deem just and proper under the circumstances.


## JURY TRIAL

ACME Products requests a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues triable of right by a jury.

23

Respectfully submitted,

Ryder, Mazzeo & Konieczny LLC

Date: June 9, 2026

/FrankAMazzeo/
Frank A. Mazzeo (NJ 294112019)
Joseph M. Konieczny, Sr. (PA 59,724)
    (*Pro hac vice* application to be filed)
P.O. Box 670
Plymouth Meeting, PA 19462
610-940-1962(voice)
610-940-1963 (fax)
fmazzeo@rmkiplaw.com
jkonieczny@ryderlu.com

*Attorneys for Plaintiff ACME Products Inc.*

24

# Exhibit 1



# Exhibit 2





